UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RONALD GILBRECH and
DAVID DABBS, individually and on
behalf of all others similarly situated,

    Plaintiffs,

v.                                         Civil Action No.: 2:10-cv-02614-cgc
                                               CLASS ACTION

MAPCO EXPRESS, INC., and
SAFECASH SYSTEMS, LLC,

    Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAPCO EXPRESS, INC.'S MOTION TO DISMISS**

---

In support of its Motion to Dismiss, Defendant MAPCO Express, Inc. submits the following:

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant, MAPCO Express, Inc. ("MAPCO"), moves the Court to dismiss Plaintiffs' Electronic Funds Transfer Act ("EFTA") claims for failure to state a claim upon which relief can be granted. In their Amended Complaint against Mapco, Plaintiffs allege that they were charged fees for cash withdrawals at various automated teller machines ("ATMs") in MAPCO stores, without first being provided with posted "on machine" notice of the fee prior to the completion of the transactions in violation of the EFTA.

The EFTA requires automated teller machine operators ("ATM operators") imposing a fee to provide ATM users with both "on machine" and "on-screen" notice of the fee. If an ATM operator fails to provide both "on machine" and "on-screen" notice of the fee, the ATM operator

may be subject to statutory penalties under the EFTA. EFTA violations, however, can only be alleged against ***ATM operators that impose a fee on consumers***.

Plaintiffs' claims against MAPCO fail because MAPCO is not an ATM operator imposing a fee on consumers and is therefore not subject to the EFTA. MAPCO is not responsible for imposing, setting, or charging the two-dollar ($2.00) fee collected at the ATMs in this case. MAPCO does not own the ATMs. MAPCO does not provide transaction processing services or monitoring services for the ATMs. Furthermore, Mapco does not stock, maintain, clean, or repair the ATMs.

MAPCO entered into a series of agreements with Defendant SafeCash Systems, LLC ("SafeCash"). Pursuant to these agreements, SafeCash rents space from MAPCO for the placement of SafeCash's ATMs in MAPCO's stores. SafeCash owns the ATMs at issue and is responsible for all aspects of the operation of the ATMs, including imposing, setting, and charging the ATM surcharge fees. SafeCash, not MAPCO, is the ATM operator in this case. Since MAPCO is not an ATM operator subject to the EFTA, MAPCO's Motion to Dismiss should be granted; and Plaintiffs' EFTA claims against MAPCO should be dismissed with prejudice.

## II.     STATEMENT OF FACTS

In order to fully illustrate Plaintiffs' lack of a claim against MAPCO, it is necessary to briefly review the facts of this case and the documents on which Plaintiffs' Amended Complaint is based. On August 20, 2010, Plaintiffs filed their initial Complaint against MAPCO alleging violations of the EFTA individually and on behalf of all others similarly situated. (Doc. 1) Plaintiffs claim to have made cash withdrawals at six (6) ATMs in MAPCO stores. (Doc. 10, ¶¶ 7-8, 36) Plaintiffs allege that they were charged two-dollar ($2.00) ATM surcharge fees for the

cash withdrawals at all six (6) of the ATMs without first being provided with "on machine" notice of the fees prior to the completion of the transactions. (Doc. 10, ¶¶ 35-36) Plaintiffs do not contest that they received "on-screen" notice of the fees at the ATMs. (*See generally* Doc. 10)

Plaintiffs used ATMs at the following MAPCO locations: (1) MAPCO #3283, 5009 Park Avenue, Memphis, Tennessee; (2) MAPCO #3015, 5211 Poplar Avenue, Memphis, Tennessee; (3) MAPCO #3282, 2767 Mt. Moriah, Memphis, Tennessee; (4) MAPCO #3280, 1781 Kirby Parkway, Memphis, Tennessee; (5) MAPCO #3292, 2100 Sycamore View Road, Memphis, Tennessee; and (6) MAPCO #3295, 2214 Whitten Road, Memphis, Tennessee ("the Alleged Store Locations"). (Doc. 10, ¶ 36) When Plaintiffs used the ATMs at the Alleged Store Locations, Plaintiffs saw the following "on-screen" fee notice:

> SURCHARGE NOTICE - THE OWNER OF THIS TERMINAL SAFECASH SYS. CHARGES A FEE OF $2.00 FOR CASH WITHDRAWALS. THE FEE IS IN ADDITION TO ANY FEE YOUR FINANCIAL INSTITUTION MAY CHARGE. DO YOU WANT TO CONTINUE?

[¶¶ 3-4 and Exhibit B of Declaration of Paige Paulett, attached hereto as Exhibit 1.]

Mapco does not own the ATMs located in the Alleged Store Locations or the ATMs in any of the other store locations set forth in the Amended Complaint. (Doc. 10, ¶ 9) Instead, Mapco entered into a Vendor Agreement and an ATM Placement Agreement ("the ATM Agreements") with SafeCash in order to make ATMs available to MAPCO customers in its stores. [Vendor Agreement and ATM Placement Agreement, attached hereto as Exhibits 2 and 3 respectively.] Pursuant to the ATM Agreements, Safecash pays MAPCO rental payments to use MAPCO's retail space in which to place and operate the SafeCash ATM's. [Exhibit 3, ¶ 1.] SafeCash's rental payments to MAPCO consist of portions of the fees charged by SafeCash at

3

the ATMs.  [Exhibit 3, ¶ 1 and Exhibits A and B thereto.]  MAPCO's rental payments increase as the surcharge transactions at SafeCash's ATMs increase.  [Exhibit 3, Exhibits A and B thereto.]  On October 6, 2010, MAPCO provided the ATM Agreements to counsel for Plaintiffs. After receiving the ATM Agreements, Plaintiffs filed an Amended Complaint on October 14, 2010 adding SafeCash as a Defendant to this action.  (Doc. 10)

The ATM Placement Agreement entered into between MAPCO and SafeCash provides in relevant part as follows:

> WHEREAS SAFECASH SYSTEMS is in the business of, among other things, placing automatic teller machines (ATM's) and maintaining such ATM's, and providing processing services related to such ATM's and:
>
> WHEREAS the MERCHANT desires to have ATM(s) placed in their establishment(s) listed in exhibit A, pursuant to the terms and conditions hereinafter set forth; and
>
> . . .
>
> 1. The Placement
>
> SAFECASH SYSTEMS will place ATM['s] in MERCHANT'S locations and will pay MERCHANT for rental of retail space in the amount as follows:  see attachments shown as Exhibit A and Exhibit B. . . .
>
> 2. Dealer Designated Responsibilities
>
> A. Transaction Processing Services:
>
> SAFECASH SYSTEMS will provide all transaction processing services for all ATM's under this agreement for the term thereof.
>
> B. Maintenance and Other Services:
>
> SAFECASH SYSTEMS will provide maintenance services, custodial services, and repair during the term of the agreement hereof.  SAFECASH SYSTEMS will respond in a timely manner to all maintenance problems. . . .

C.  Monitoring Services:

SAFECASH SYSTEMS will provide monitoring of the levels and types of activity for any and all ATM's placed under this agreement.  The MERCHANT will have no responsibility for monitoring . . . .

. . .

3.  Transaction Fees and Surcharges:

"Transaction Fees" to be imposed upon every withdrawal performed on any ATM placed under this agreement shall be set forth by SAFECASH SYSTEMS.  All transactions fees shall be the property of SAFECASH SYSTEMS unless specified in section 1.  Transaction fees may be waived on certain customers at SAFECASH SYSTEMS discretion.

4.  Cash and Loading of Cash:

SAFECASH SYSTEMS agrees to provide all cash and loading of cash to all ATM's and agrees to keep it stocked with cash during business hours.

5.  Location of the ATM:

MERCHANT agrees to provide space near the checkout/entrance and in a high visibility area.  MERCHANT agrees not to do anything that would compromise the security or operation of the ATM.  SAFECASH SYSTEMS shall have access to the premises at all times during normal operating hours for the purpose of servicing the ATM.

. . . .

MERCHANT is not responsible for damages to the ATM brought on by [*sic*] customer negligence.  Also, if machine is damaged, destroyed or stolen, MERCHANT will not be responsible.

. . . .

8.  Scope of Rights Conferred Hereby:

SAFECASH SYSTEMS is the sole owner of all ATM's covered by the agreement.  The ATM's covered by this agreement shall not be considered a fixture, MERCHANT shall not encumber or

5

> mortgage the ATM. SAFECASH SYSTEMS retains the right of access to recover the ATM at any time during, or at the termination of the agreement. SAFECASH SYSTEMS is acquiring no rights in any of the MERCHANTS property or premises, other than the license for placement of the ATM during the term of the agreement.
>
> . . .
>
> 17. Relationship of Parties:
>
> SAFECASH SYSTEMS is an independent contractor and not an employer, partner or joint venturer of MERCHANT. . . .
>
> . . .

[Exhibit 3.] Moreover, the Vendor Agreement entered into between MAPCO and SafeCash reads in relevant part as follows:

> 4. <u>Compliance With Laws.</u> Vendor [SafeCash] shall comply with all federal, state and local laws, ordinances, codes and regulations governing the products or services provided hereunder. . . .
>
> 10. <u>Relationship of the Parties</u>. Vendor [SafeCash] is an independent contractor and not an employer, partner or joint venturer of MAPCO. . . .

[Exhibit 2.]

### III. STANDARD OF REVIEW FOR RULE 12(b)(6) MOTION TO DISMISS AND THE EXHIBITS ATTACHED THERETO

MAPCO's request for relief meets the standard of review for Fed. R. Civ. P. 12(b)(6) motions to dismiss, and the Court can consider the exhibits attached to this Motion in its decision. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

6

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  The plausibility standard is not a "probability requirement," yet "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557)).

In evaluating a motion to dismiss, a court must take all of the factual allegations in the complaint as true; however, courts are not bound to accept as true legal conclusions that are couched as factual allegations.  Id.  A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. Id.  Similarly, a complaint is not adequate if it proffers "naked assertions devoid of further factual enhancement." Id.  Overall, where the facts pled "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but not shown – that the pleader is entitled to relief." Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss, a court may consider "a document that is not formally incorporated by reference or attached to a complaint" as part of the pleadings. Greenburg v. The Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999) (citing 11 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 56.30[4] (3d ed. 1998)).  In particular, when a document is attached as an exhibit to a motion to dismiss, the document is part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim." Id.  In such a case, the moving defendant "may submit an authentic copy to the court to be considered . . . , and the court's consideration of the document does not require conversion of the motion to one for summary judgment." Id. (holding that insurance policies attached to motion to dismiss

7

were not "matters outside the pleadings," because the policies were referred to throughout the complaint, the policies were central to plaintiffs' claims, and all claims asserted in the complaint related to and arose from the policies) (citations omitted).[1] Put another way, "'a court may consider an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 (3rd Cir. 1997) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3rd Cir. 1993)).

Here, Plaintiffs' Amended Complaint is inadequate to state an EFTA claim against MAPCO because it is devoid of any specific factual allegations that would lead to a reasonable inference that MAPCO, and not SafeCash, is the ATM operator allegedly imposing ATM fees on Plaintiffs. Plaintiffs' Amended Complaint simply lumps Defendants together as "Mapco/SafeCash" and makes broad assertions in a formulaic recitation of the statutory requirements of an EFTA claim. This is not sufficient to show that MAPCO is an ATM operator subject to EFTA, especially in light of the language of the ATM Agreements and the language appearing to Plaintiffs on the screens of the ATMs at issue. In deciding MAPCO's Motion to Dismiss, the Court can look to and rely upon the ATM Agreements and the Declaration of Paige Paulett (attached hereto as Exhibits 1 through 3) without converting the Motion to Dismiss to a Motion for Summary Judgment under Fed. R. Civ. P. 56.[2] Plaintiffs' claims are based upon the

---

[1] See also Moeckel v. Caremark Rx, Inc., 385 F. Supp. 2d 668, 673 (M.D. Tenn. 2005) (holding that a service contract, attached to a motion to dismiss but not the complaint, was not a matter outside the pleadings, because the plaintiff's claim was based on the service contract); Cortec Indus., Inc. v. Sum Holding, L.P. et al., 949 F.2d 42, 47-48 (2nd Cir. 1991) (determining that the district court properly reviewed a warrant, offering memorandum, and stock purchase agreement that were exhibits to a Rule 12(b)(6) motion to dismiss but not exhibits to the complaint, because the documents were integral to the complaint).

[2] Whether the Court treats this Motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or as a motion for summary judgment under Fed. R. Civ. P. 56, MAPCO submits that the disposition of the case will still be the same. Under either standard, Plaintiffs' Amended Complaint should be dismissed as to its claims against MAPCO.

subject matter of the ATM Agreements. Furthermore, prior to filing their Amended Complaint, Plaintiffs viewed and therefore had notice of the on-screen disclaimers at the ATMs indicating that SafeCash is the ATM operator imposing a fee on ATM users. Plaintiffs' failure to include the wording of the language of the "on-screen" notice indicating who the ATM operator is should not prejudice MAPCO.

## IV.   LEGAL ANALYSIS

The EFTA makes it clear that EFTA claims can only be asserted against ***ATM operators imposing a fee on consumers***. MAPCO is not the ATM operator imposing any alleged fees on Plaintiffs. Thus, Plaintiffs' EFTA claims against MAPCO fail and should be dismissed.

Pursuant to the EFTA, the term "automated teller machine operator" means any person who

> (I)   operates an automated teller machine at which consumers initiate electronic fund transfers; and
>
> (II)   is not the financial institution that holds the account of such consumer from which the transfer is made.

15 U.S.C. § 1693b(d)(3) (2010). Under the EFTA, an ATM operator is required to provide certain types of notice of the fees it charges to consumers. Specifically, 15 U.S.C. § 1693b(d) provides in pertinent part as follows:

> **(3)  Fee disclosures at automated teller machines**
>
> **(A)  In general**
>
> The regulations prescribed under paragraph (1) shall require any ***automated teller machine operator who imposes a fee on any consumer*** for providing host transfer services to such consumer ***to provide notice*** in accordance with subparagraph (B) to the consumer (at the time the service is provided) of –
>
>> (i)   the fact that ***a fee is imposed by such operator*** for providing the service; and

9

>> (ii)  the amount of any such fee.
>
> **(B)  Notice requirements**
>
> **(i)  On the machine**
>
>> The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.
>
> **(ii)  On the screen**
>
>> The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated but before the consumer is irrevocably committed to completing the transaction . . . .
>
> **(C)    Prohibition on fees not properly disclosed and explicitly assumed by the consumer**
>
>> <u>*No fee may be imposed by any automated teller machine operator*</u>  in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless –
>>
>> (i)  the consumer receives such notice in accordance with subparagraph (B); and
>>
>> (ii)   the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

15 U.S.C. § 1693b(d) (2010) (emphasis added).

Similarly, 12 C.F.R. § 205 *et seq.*, commonly referred to as Regulation E, reiterates that EFTA claims can only be asserted against <u>***ATM operators imposing a fee on consumers***</u>.  In enacting EFTA, Congress delegated to the Board of Governors of the Federal Reserve System

the authority and responsibility to prescribe regulations, such as Regulation E, to carry out the purposes of the EFTA. 15 U.S.C. § 1693b(a) (2010). Section 205.16 of Regulation E reads as follows:

> **§ 205.16 Disclosures at automated teller machines**
>
> (b) General. ***An automated teller machine operator that imposes a fee on a consumer*** for initiating an electronic fund transfer or a balance inquiry shall:
>
> (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
>
> (2) Disclose the amount of the fee.

12 C.F.R. § 205.16.

In <u>Azose v. J.P. Morgan Chase Bank</u>, No. 07-CV-4995, 2010 WL 376632 (E.D.N.Y. Jan. 26, 2010), attached hereto as Exhibit 4, the United States District Court for the Eastern District of New York addressed the importance of the language "***automated teller machine operator that imposes a fee on a consumer***" in the EFTA and Regulation E. In <u>Azose</u>, two banks participated in a "shared network" arrangement wherein the card-issuing bank paid the ATM operating bank a fee every time the card-issuing bank's customers used the ATM operating bank's ATMs. <u>Azose</u>, 2010 WL 376632 at *1. The card issuing bank recouped these fees from its own customers. <u>Id</u>. Plaintiffs sued both banks for alleged violations of the notice and fee requirements of EFTA and Regulation E. <u>Id.</u> at *2. Plaintiffs alleged that by virtue of the "shared network" arrangement, the ATM operating bank was required to provide plaintiffs with notice of the card-issuing bank's fees, because the ATM operating bank received a portion of the fees charged to plaintiffs by the card-issuing bank. <u>Id.</u> at *6.

The <u>Azose</u> court granted the ATM operating bank's Fed. R. Civ. P. 12(b)(6) motion to dismiss holding that the ATM operating bank was only required to provide notice and fee

11

disclosures under the EFTA for the ATM fees it actually imposed on consumers. Id. at *7. The court determined further that the fact that the ATM operating bank received a portion of the fee charged to plaintiffs by the card-issuing bank under the "shared network" agreement did not establish EFTA liability. Id. Since the ATM operating bank was not required to provide notice of the fees under EFTA and plaintiffs had not alleged any facts indicating that the banks had formed a joint venture to impose the ATM fees, the Court dismissed plaintiffs' EFTA complaint. Id. at 9.

Like the bank in Azose, MAPCO is not an ***ATM operator imposing a fee on consumers*** and is therefore not subject to the notice requirements of EFTA. The ATM "on-screen" notice provided at the ATMs makes it clear that SafeCash – not MAPCO – is imposing the two-dollar ($2.00) ATM fee on consumers. [Exhibit 1, ¶ 4 and Exhibit B thereto.] Furthermore, pursuant to the ATM Agreements, the ATM fees imposed on consumers by SafeCash "shall be set forth by SafeCash" and "shall be the property of SafeCash." [Exhibit 3, ¶ 3.] The fact that MAPCO receives portions of the surcharge fees imposed upon consumers by SafeCash as rental payments does not establish EFTA liability. MAPCO is not imposing a fee directly upon the ATM users; and, under the reasoning of Azose, without any factual allegations in Plaintiffs' Amended Complaint showing a joint venture formed between SafeCash and MAPCO to assess ATM fees,[3] Plaintiffs' Amended Complaint fails to state a claim against MAPCO upon which relief can be granted and should be dismissed.

---

[3] The ATM Agreements in this case specifically rule out the possibility of a SafeCash/MAPCO joint venture with the following language: "SAFECASH is an independent contractor and not an employer, partner or joint venturer of MERCHANT [MAPCO] . . ." and "Vendor [SafeCash] is an independent contractor and not an employer, partner or a joint venturer of MAPCO . . . ." [Exhibit 3, ¶ 17; Exhibit 2, ¶ 10.]

Like the EFTA itself, the ATM Agreements put the burden of complying with the notice and fee disclosure provisions of EFTA on SafeCash as the ATM operator imposing a fee on consumers. The Vendor Agreement between SafeCash and MAPCO contains the following mandate:

> Compliance With Laws. Vendor [SafeCash] shall comply with all federal, state and local laws, ordinances, codes and regulations governing the products or services provided hereunder. . . .

[Exhibit 2, ¶ 4.] The EFTA is a federal law and Regulation E is a regulation, both of which SafeCash, as the ATM operator imposing a fee on consumers, is required to follow, not MAPCO. The aforementioned "Compliance With Laws" provision in the ATM Agreements is especially telling in light of the holding in the Pennsylvania case styled Greiff v. Palace Entertainment Holdings, LLC, No. 09-1388, 2010 WL 1816300 (W.D. Pa. May 4, 2010), attached hereto as Exhibit 5.

In Greiff, a company entered into a license agreement with an ATM provider under which the ATM provider placed an ATM in a park owned by the company. Greiff, 2010 WL 1816300 at *1. In exchange, the company received a portion of the surcharge fee revenue generated at the ATM by the ATM provider. Id. The company and the ATM provider were both sued by a purported class of plaintiffs under the EFTA for allegedly failing to post notice of the fee on the ATM. Id. The company filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss on the grounds that it was not an ATM operator and therefore was not subject to the EFTA.

The Greiff court denied the company's motion to dismiss; however, the Grieff case is distinguishable from this case. In Grieff, the licensing agreement between the company and the ATM provider explicitly placed the burden of complying with EFTA on the company with the following language: the company "shall comply with all laws . . . affecting . . . the use of the

13

ATM." Id. The Grieff court relied upon this language in denying the company's motion to dismiss. Unlike Grieff, the ATM Agreements in this case explicitly state that SafeCash, not MAPCO, shall comply with all federal laws and regulations relating to the ATMs. [Exhibit 2, ¶ 4.]

Finally, in addition to imposing, setting, and charging the ATM fees, all other indicia of operation points to SafeCash as the ATM operator in this case. SafeCash owns the ATMs and can recover the ATMs at any time. [Exhibit 3, ¶ 8.] SafeCash provides all transaction processing services and monitoring services for the ATMs. [Exhibit 3, ¶ 2(A) and (C).] SafeCash provides all maintenance services, custodial services, and repair for the ATMs. [Exhibit 3, ¶ 2(B).] SafeCash provides all cash for the ATMs, loads the ATMs, and keeps the ATMs stocked during business hours. [Exhibit 3, ¶ 4.] Based upon the language of the EFTA, Regulation E, the ATM "on-screen" notice, and the ATM Agreements, MAPCO is not the ATM operator in this case. Accordingly, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted, and Plaintiffs' EFTA claims against MAPCO should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, MAPCO's Motion to Dismiss should be GRANTED, and Plaintiffs' claims against MAPCO in their Amended Complaint should be DISMISSED with prejudice, with costs assessed against Plaintiffs.

        Respectfully submitted,

        /s/  Robert L. Crawford
        Glen G. Reid, Jr. (TN #08184)
        Robert L. Crawford (TN# 7216)
        Kacey L. Faughnan (TN# 24421)
        WYATT, TARRANT & COMBS, LLP
        1715 Aaron Brenner Drive, Suite 800
        Memphis, TN 38120
        Telephone: (901) 537-1000
        Facsimile: (901) 537-1010

        *Counsel for MAPCO Express, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2010, a copy of the foregoing was served upon the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

B.J. Wade, Esq.
GLASSMAN, EDWARDS, WADE &
WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Eric C. Calhoun, Esq.
TRAVIS, CALHOUN & CONLON, P.C.
1000 Providence Towers East
5001 Spring Valley Road
Dallas, Texas 75244

        /s/  Robert L. Crawford